## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ROJELIO BARRON,         )
                                 )
        **Plaintiff,**      )
                                 )
v.                          )      **Case No. CIV-23-378-GLJ**
                               )
MICHELLE KING,[1]     )
Acting Commissioner of the Social )
Security Administration,     )
                               )
        **Defendant.**   )

## OPINION AND ORDER

Claimant Rojelio Barron requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] In January 2025, Michell King became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. King is substituted for Kilolo Kijakazi as the Defendant in this action.

—

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was fifty-four years old at the time of the administrative hearing. (Tr. 44). He completed twelfth grade and has worked as a cleanup worker and air conditioner unit assembler. (Tr. 34, 330). Claimant alleges that he has been unable to work since December 31, 2015, due to bilateral hip replacements, heart issues, lower lumbar pain, blood clot in artery, brain aneurysm, depression, anxiety, and mental health. (Tr. 329).

### Procedural History

On August 30, 2021, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated April 19, 2023. (Tr. 27-36). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he found Claimant had the severe impairments of degenerative joint disease, substance addiction disorders, depressive, bipolar, anxiety, and obsessive-compulsive disorders, as

well as the nonsevere impairments of degenerative disc disease, morbid obesity, and eye illness. (Tr. 29-30). He then determined Claimant did not meet a Listing at step three, including Listing 1.18. At step four, he found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he could only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; frequently balance; and never climb ladders/ropes/scaffolds; and that he must avoid frequent exposure to unprotected heights and dangerous machinery. Additionally, he found Claimant could understand, remember, and carry out simple routine and repetitive tasks, focus for two-hour periods with routine work breaks, pace and persist for an eight-hour work day and forty-hour work week, interact with supervisors and co-workers on a superficial work basis, and adapt to a work setting and some changes in the work setting with forewarning, but that he was unable to interact appropriately or tolerate contact with the general public. (Tr. 31). The ALJ then concluded that although Claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e.g.*, inspector and hand packager, marker, and bench assembler. (Tr. 34-35).

## Review

Although Claimant's arguments do not follow a linear path, Claimant appears to contend that the ALJ failed to properly assess his RFC by improperly evaluating the medical opinions in the record, particularly the opinions from the state agency reviewing physicians as to both physical and mental assessments, as well as the opinion of a reviewing physician hired by Claimant's representative at the administrative level. He also contends

-4-

the ALJ failed to apply Listing 1.17, and failed to properly evaluate his subjective statements.  The Court agrees with Claimant's contention as it relates to ALJ's assessment of Claimant's RFC, particularly in relation to the medical opinions in the record, and the decision of the Commissioner must therefore be reversed.

The relevant medical records as to the claimant's physical impairments reflect Claimant had a crush injury that affected both hips, requiring bilateral hip replacements in 1996 and 1997. (Tr. 424).  After pain developed in both hips in 2019, with it worse in the right hip, he underwent a revision of a right hip arthroplasty with polyethylene liner exchange, and bone graft, on November 16, 2020.  (Tr. 416, 439).  Six weeks post op, Claimant was walking without an assistive device, but reported continued pain in the groin, which he had exacerbated by riding a bicycle recently.  (Tr. 410).  The doctor instructed Claimant not to ride a bicycle unless under supervision of a physical therapist, then recommended physical therapy as well as pain management.  (Tr. 411).

On June 18, 2021, Claimant presented for treatment of chronic bilateral hip pain, with continued right groin pain and lateral left hip pain, as well as low back pain.  (Tr. 549).  Upon exam, his lumbosacral spine exhibited tenderness with almost all range of motion, but no muscle spasms or abnormalities.  (Tr. 551).  A July 2021 MRI of the lumbar spine revealed multilevel disc and facet degenerative changes of the lumbar spine most notable at L4-L5 with moderate narrowing of the bilateral recesses and mild bilateral foraminal narrowing with moderate spinal canal stenosis.  (Tr. 544).  An August 2021 MRI of the cervical spine revealed degenerative disc changes resulting in multilevel foraminal stenosis, poor flow related signal in the left vertebral artery which could suggest chronic

thrombosis, and inflammatory facet arthropathy/synovitis involving the right facet joint at C4-C5 and left facet joint at C3-C4.  (Tr. 539, 646, 655).  He was diagnosed that day with left vertebral artery dissection, atherosclerotic cardiovascular disease, chronic back pain, dizziness, mild orthostasis, and left shoulder pain.  (Tr. 647).

By December 2021, an x-ray of the lumbar spine showed osteopenia and mild degenerative changes, but no fracturing.  (Tr. 671).  X-rays of the cervical spine showed degenerative changes most pronounced at C5-C6 and C6-C7, as well as minimal subluxation (or partial dislocation) of C4 on 5.  (Tr. 678).  On December 18, 2022, a physician assessed Claimant with bilateral sacroiliitis, bilateral hip pain, degenerative disc disease of the lumbar spine, and chronic pain.  (Tr. 952).

As to his mental impairments, Claimant received mental health treatment at Red Rock Behavioral Health Services intermittently over several years, dating back to at least 2019.  His diagnoses include:  depression, generalized anxiety disorder, and alcohol abuse. (Tr. 451-455).  In 2019, Claimant was inpatient for six days for crisis stabilization after admitting to suicidal ideation.  (Tr. 472, 499).

On February 20, 2023, Dr. Jeffrey N. Hansen, M.D., reviewed Claimant's Social Security file at the request of Claimant's Administrative Representative, Polly Murphy. Dr. Hansen assessed Claimant with bilateral post traumatic arthritis of the hips with failed total hip replacements, lumbar degenerative disc disease causing spinal stenosis and nerve root impingement resulting in low back and leg pain, and degenerative disc disease of the cervical spine with instability and significant multi-level nerve root impingement secondary to neuroforaminal stenosis causing neck pain and projected pain into the right

greater than left arm. (Tr. 1035). After reciting the evidence supporting each diagnosis, Dr. Hansen indicated that Listing 1.17 should have been considered even though it is not actually met, due to his failed total hip replacements and need for an ambulatory assistive device. Additionally, he believed Claimant met a Listing equivalency due to his bilateral hip pathology with cervical, thoracic, and lumbar disc disease with nerve root compression and spinal stenosis, or alternatively, that he has an RFC of less than sedentary. (Tr. 1035-1037). Dr. Hansen found Claimant could: (i) stand/walk two hours in an eight-hour workday, for a maximum of thirty minutes at one time; (ii) sit four hours in an eight-hour workday, at thirty-minute intervals; (iii) lift/carry ten pounds occasionally, maximum; (iv) never bend, stoop, kneel, crouch, and crawl; (v) only occasional reaching overhead with upper extremities due to lumbar impairment; (vi) frequent handling, fingering, and feeling while seated; (vii) no climbing or exposure to dangerous machinery; and (viii) only rare operation of foot controls. (Tr. 1037).

State reviewing physicians determined initially and on reconsideration that Claimant could perform the full range of light work, with no additional postural, manipulative, environmental, or other limitations. (Tr. 106-108, 130-133). Both reviews occurred nearly one year prior to Dr. Hansen's review of the case, but did contain reference to the MRIs in the record. As to his asserted mental impairments, the state reviewing physician determined initially that Claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, completely a normal workday and workweek, and interact appropriately with the general public. (Tr. 108-109). He

concluded Claimant was able to understand, recall and perform simple and detailed tasks and make related judgments, concentrate for two-hour periods with routine breaks, pace and persist for an 8-hour work day and 40-hour work week despite psychological symptoms, interact on a superficial basis with coworkers and supervisors, tolerate working in the presence of the public when frequent conversation or communication is not needed, and adapt to work setting and some changes in the work setting. (Tr. 111). On reconsideration, the reviewing physician made similar findings regarding moderate limitations, except he further found Claimant markedly limited in the ability to carry out detailed instructions and interact appropriately with the general public. (Tr. 133-134). He concluded Claimant was able to understand, recall, and perform simple repetitive tasks, focus for two-hour periods with routine breaks, pace and persist for an 8-hour work day and 40-hour work week despite psychological symptoms, interact on a superficial basis with coworkers and supervisors, and adapt to work setting and some changes in the work setting with forewarning, but that he was *unable* to interact appropriately or tolerate contact with the public. (Tr. 134).

At the administrative hearing, Claimant testified that he could "walk a good block," and lift maybe twenty or thirty pounds. (Tr. 69). He further testified that his hip is always hurting, as well as the lower part of his back and neck, and he gets very bad headaches. (Tr. 71). He testified later in the hearing that he has pain when walking, and he experiences pain when rising from a seated position. (Tr. 80-81).

In his written opinion, the ALJ summarized Claimant's hearing testimony and some of the medical evidence in the record. As relevant here, he noted Claimant's past treatment

for alcohol abuse, as well as a six-day stay in a crisis unit in 2019, but attributed it to drug use without mention of the suicidal ideation. (Tr. 32). Additionally, he recounted Claimant's right hip arthroplasty and continued groin pain thereafter but noted he had ridden a bicycle across town. (Tr. 32). Additionally, the ALJ summarized Claimant's reports of low back pain in 2021 and 2022, including the CT scan showing the occlusion but no stroke. (Tr. 33). The ALJ provided no substantive discussion regarding Claimant's subjective statements. (Tr. 32-34). The ALJ then concluded, without connecting this conclusion to the evidence, that Claimant could perform light work with the aforementioned postural limitations. (Tr. 30). The ALJ found that the state reviewing physicians limited Claimant to "a Light exertional job with additional mental limitations," then stated (without further discussion of the opinions or their contents) "[t]his is somewhat supported by his alleged pain and mental symptoms cited, but is somewhat inconsistent with these and findings of degenerative joint disease that indicates he needs [unidentified] additional postural and mental limits." (Tr. 33). The ALJ found Dr. Hansen's opinion "less persuasive," because (like the state reviewing physicians), he only reviewed the records and did not examine Claimant. (Tr. 33). He then found Dr. Hansen's conclusions "grossly inconsistent with the [unidentified] record indicative of intact strength and ability to ambulate." (Tr. 34). The ALJ ultimately concluded that the claimant was not disabled. (Tr. 34-36).

The Court first notes that Claimant's argument as to the Listing is unavailing. The ALJ found that Listing 1.18 did not apply because it did not result in the inability to use either one or both upper extremities. Although Claimant bears the burden of proof at step

three to establish that he meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that ... [are] so severe as to preclude substantial gainful activity." *Clifton*, 79 F.3d at 1009 (quotation omitted). *Clifton* requires the ALJ to discuss the evidence and explain why the claimant was not disabled at step three. *Id.* (*citing Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986)). Referring to Dr. Hansen's opinion, Claimant contends he medically equals Listing 1.17 because the ALJ failed to discuss the 2021 MRI of his cervical spine which Dr. Hansen asserts shows nerve root impingement. Both Listings, however, require "[a] documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i))," *see* 20 C.F.R. P. 404, Suppt. P, App. 1, §§ 1.17, 1.18, with regard to lower extremities. While Dr. Hansen recommended an assistive device, a prescription for such device is not contained in the record. Despite mentioning Listing 1.17 at least twice in his Opening Brief, Claimant points to no evidence to support a finding that he *meets* either listing. Rather, Claimant essentially asks the Court to reweigh the evidence in the record, which is impermissible. *See Casias*, 933 F.2d 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

Next, Claimant argues that the ALJ failed to properly assess his RFC, including the medical opinions in the record of all four state reviewing physicians and the opinion of Dr. Hansen. For claims filed on or after March 27, 2017, medical opinions are evaluated

pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ stated that all four state reviewing physician opinions were somewhat persuasive, and that the opinions as to his impairments were "somewhat supported by his alleged pain and mental symptoms cited, but [] somewhat inconsistent with these and findings of degenerative joint disease that indicates he needs additional postural and mental limitations." (Tr. 33). The ALJ did not explain the need for the additional postural limitations (and not others) or how the additional ones in the RFC fully accounted for Claimant's physical impairments, nor did he address the differences between the two opinions regarding Claimant's mental impairments and why he presumably found the reconsideration opinion more persuasive (as that more closely aligns to the assigned RFC). As to Dr. Hansen, the ALJ essentially rejected his opinion for the same problem inherent in the state reviewing physician opinions – there was no in-person physical examination of Claimant – but added that it was inconsistent with the record showing intact strength and ability to ambulate, which ignores Dr. Hansen's recommendation that Claimant needs an RFC of less than sedentary in light of his bilateral hip pathology *in combination with* cervical, lumbar, and thoracic degenerative disc disease with nerve root compression and spinal stenosis, *i.e.*, objective test results. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton,* 79 F.3d at1010 ("[I]n addition to discussing the

evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

The error with regard to evaluation of the state reviewing physician is indicative of larger errors. The ALJ made no clear explanation for the differences between his RFC assessment and the RFC suggested by the state reviewing physicians, particularly after she found them both persuasive. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013).

While the RFC assessed in this case is more restrictive than that of the state reviewing physicians, the ALJ fails to connect it to the evidence in the record and, as discussed above, fails to acknowledge multiple records indicative of additional/differing limitations. The ALJ did not explain how the prescribed additional postural limitations of occasional climbing ramps/stairs, stooping, kneeling, crouching, and crawling, accounted for his degenerative disc disease (affecting range of motion) *in addition to* his degenerative joint disease (affecting gait) and obesity. Furthermore, he failed to consider all of the impairments in combination. This is error because the ALJ is required to consider all of a

-13-

claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [Claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (*quoting Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (*quoting* 20 C.F.R. § 404.1523)); *see also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

Because the ALJ failed to account for Claimant's documented degenerative disc disease (supported by multiple MRIs), as well as how the RFC accounts for all physical impairments singly and in combination, the RFC as articulated is incapable of meaningful review. *See Guerra v. Astrue*, 918 F. Supp. 2d 1180, 1188 (D. Kan. 2013). ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review."), *see also Crane v. Kijakazi*, 2021 WL 4270135, at *3 (E.D. Okla. Aug 31, 2021) ("Because the ALJ failed to account for the claimant's documented

shoulder impairments . . . the RFC does not wholly account for his impairments."). The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

By failing to adopt completely the state reviewing medical opinions and largely ignoring the consultative examination objective findings, the ALJ was left without a medical opinion to rely on in forming his RFC determination. "Although a medical opinion is not required for the RFC determination, '[i]n cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.'" *J.Z. v. Kijakazi*, 2022 WL 859765, at *6 (D. Kan. Mar. 23, 2022) (quoting *Pedraza v. Berryhill*, 2018 WL 6436093, at *4 (D. Kan. Dec. 7, 2018)); *Wells v. Colvin*, 727 F.3d 1061, 1071-1072 (10th Cir. 2013). The ALJ does not have a duty to order a consultative examination and therefore has "broad latitude" in deciding whether or not to do so. *Hawkins*, 113 F.3d at 1166 (*citing Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.]" *Id.* [citation omitted]. However, "the ALJ should order a consultative exam when evidence in the record establishes the reasonable

possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. While acknowledging the ALJ's discretion here, such an examination would have been helpful in this case in providing clarity as to the extent of Claimant's physical impairments along with more specific effects on his functional limitations and mobility rather than, as here, the ALJ choosing some opaque middle ground unrelated to any medical opinion but that nevertheless avoids a finding of disability.

As to Claimant's mental impairments, there is not a medical opinion in the record that contradicts the ALJ's mental RFC determination. As such, it was not error for the ALJ to form an RFC based on the medical evidence of record without a medical source opinion. *Troutman v. Kijakazi*, 2022 WL 2960134, at *4-5 (W.D. Okla. July 26, 2022) (finding the ALJ did not "play doctor" when "the ALJ proffered an adequate explanation for rejecting the [medical opinion] and determined Plaintiff's RFC based on the evidence of record[.]"). As to any assertion that the ALJ failed to develop the record on *this issue*, there is no indication that counsel requested further medical examinations, and the need was not clearly established in the record. *Jazvin v. Colvin*, 659 Fed. Appx. 487, 489 (10th Cir. 2016) ("[I]f the Claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'") (quoting *Hawkins*, 113 F.3d at 1168). Nonetheless, on remand, the Court encourages the ALJ to consider ordering a consultative examination to properly account for both Claimant's physical *and* mental impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report

from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

On remand, the ALJ should likewise carefully evaluate Claimant's pain, and the consistency of his statements with the evidence (including any additional evidence provided by a consultative examiner). As part of the symptom analysis, required under Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017), the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures Claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8.

Accordingly, the decision of the ALJ is hereby reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to Claimant's impairments, as well as a thorough evaluation of Claimant's pain in relation to these impairments. If such analysis on remand results in any adjustment to Claimant's RFC, the ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 13th day of February, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**